**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **RODOLFO MORALES CISNEROS** | § | |
| | § | **A-16-CV-0671-LY** |
| **V.** | § | **A-16-CV-0672-LY** |
| | § | **A-16-CV-0673-LY** |
| **LORIE DAVIS** | § | **A-16-CV-0674-LY**[1] |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

TO:     THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates.

Petitioner is represented by counsel and has paid the full filing fee for this case. Before the Court are Petitioner's Application for Writ of Habeas Corpus under 28 U.S.C. § 2254 and memorandum in support of the application (Document 1), and Respondent's Answer (Document 9). For the reasons set forth below, the undersigned finds that Petitioner's Application for Writ of Habeas Corpus should be denied.

**STATEMENT OF THE CASE**

**A.     Petitioner's Criminal History**

Respondent has custody of Petitioner pursuant to four separate, but related, judgments of the 428th District Court of Hays County, Texas.  Each of four separate grand jury indictments returned

---

[1] The matters were consolidated on July 18, 2016, pursuant to Respondent's unopposed motion at Document 7.

June 6, 2012, charged Petitioner with one count of aggravated sexual assault of a person under 6-years of age. Document 11, Exh. 20 at 4; Document 12, Exh. 2 at 4 & Exh. 4 at 4 & Exh. 6 at 4. Petitioner was represented by retained counsel at his trial. Document 11, Exh. 3 at 2 n.2. Petitioner was found guilty by a jury on four counts of aggravated sexual assault of a child younger than 6-years of age, and a judge sentenced him to concurrent terms of 70 years imprisonment on each conviction. Document 11, Exh. 20 at 9; Document 12, Exh. 2 at 9 & Exh. 4 at 10 & Exh. 6 at 9.

Petitioner appealed his convictions and sentences, asserting he was denied the effective assistance of trial counsel. All four of Petitioner's convictions were affirmed by the Texas Third Court of Appeals. *Cisneros v. State*, No. 03-13-00206-CR, 2015 WL 1215625 (Tex. App.—Austin 2015, pet. ref'd). Petitioner sought a rehearing, which was denied. Document 11, Exh. 4 at 1. A petition for discretionary review was refused without written order by the Texas Court of Criminal Appeals on July 29, 2015. Document 10, Exh. 19 at 1.

On January 12, 2016, Petitioner, through counsel, filed an application for a state writ of habeas corpus. Document 11, Exh. 20 at 30-37. In his state habeas corpus application Petitioner asserted he was denied his right to the effective assistance of trial counsel. *Id.* Petitioner's lead trial counsel filed an affidavit in Petitioner's state habeas action, explaining his trial strategy. *Id.*, Exh. 20 at 58-63. The state trial court issued an order denying the application on February 9, 2016. *Id.*, Exh. 20 at 66. On March 1, 2016, Petitioner, through counsel, filed a motion in the Texas Court of Criminal Appeals captioned as a "Motion to Permit Applicant to Present His Application to Another District Court Or, Alternatively, For Remand For Further Proceedings On Applicant's Unresolved Claims." *Id.*, Exh. 18 at 1-4. The motion states:

On February 17, 2016, counsel received notice from the district clerk that the trial court had denied a hearing on the writ application and order[ed] the clerk to transmit its order and the record to this Court. The trial court's order reflects that it was filed in the district clerk's office at 4:27 p.m. on February 9, 2016. The order purported to prohibit the issuance of the writ and deny the claims. On February 17, 2016, counsel sent a proposed order withdrawing the trial court's order. The trial court set the matter for a hearing, which was held on February 25, 2016. Ultimately, the trial court decided it lacked jurisdiction to withdraw its order, but alluded generally to the desirability of a hearing.

*Id.*, Exh. 9 at 2.

As noted by Petitioner,

The trial court did not conduct a hearing [prior to denying relief] or make any findings of fact or conclusions of law. The trial court entered no recommendation concerning the application. The trial court purported to deny issuance of the writ and deny the merits of the writ application as well. After the record was forwarded to the Texas Court of Criminal Appeals, that Court denied relief "without written order" on May 4, 2016.

Document 1 at 3. *See also* Document 11, Exh. 19 (Texas Court of Criminal Appeals' order denying the application for a writ of habeas corpus).

## B.     Factual Background

On March 6, 2012, Petitioner's step-grandchild ("A.D.") reported to her grandmother that Petitioner had sexually assaulted her. Document 10, Exh. 3 at 116; Exh. 4 at 74, 77-78, 103. The day after this "outcry" occurred, the grandmother relayed the information to A.D.'s mother. *Id.*, Exh. 4 at 148.

The Texas Court of Appeals summarized the facts as follows:

The jury heard evidence that appellant perpetrated various sexual acts against A.D. on multiple occasions, including performing oral sex on her ("putting his tongue on her private part" or "licking her hoo ha"), penetrating her sexual organ with his finger ("touching inside her private part with his finger"), penetrating her sexual organ with his penis ("putting his private part in her private part" or "putting

his hoo ha in her hoo ha"), and penetrating her anus with his finger ("putting his finger in her bottom" or "putting his finger in her tail").

*Cisneros*, 2015 WL 1215625 at *4 n.1.

A police report was filed on May 7, 2012. Document 10, Ex. 3 at 89; Exh. 4 at 149, and the child was taken to a sexual assault nurse examiner. *Id.*, Exh. 4 at 154. The sexual assault exam showed no evidence of trauma to the victim. *Id.*, Exh. 4 at 50. The sexual assault nurse examiner testified that it was not uncommon that no trauma would be seen even if penetration had occurred. *Id.*, Exh. 4 at 28. Petitioner voluntarily gave a DNA sample to the police, *id.*, Exh. 3 at 133, and Petitioner's DNA was not found on A.D.'s body or clothing. *Id.*, Exh. 4 at 26. The sexual assault nurse examiner testified that A.D. had "[w]iped, showered, urinated, defecated, had food or drink, brushed teeth or used mouthwash, and changed clothes" prior to the collection of potential DNA samples from A.D. *Id.*

A forensic interview of A.D. was conducted at The Roxanne's House on March 8, 2012. *Id.*, Exh. 3 at 91, 94-98. On March 14, 2012, Petitioner was interviewed by Detective Eugene Carranza, in the presence of his attorney. *Id.*, Exh. 3 at 105-10. On April 20, 2012, after interviewing the victim's grandmother, Gloria, Detective Carranza sought a warrant to arrest Petitioner, which warrant was issued the same day. *Id.*, Exh. 3 at 118-21, 123-24. On April 26, 2012, Petitioner reported to the Hays County Sheriff's Office. *Id.*, Exh. 3 at.124-25.

The victim testified at trial, as did her parents, her grandmother, her counselor, the sexual assault forensic examiner, the director of The Roxanne's House, a police detective, and Detective Carranza.

A.D.'s grandmother, Gloria, testified that A.D. told her prior to May 6, 2012, that Petitioner had abused her, and Gloria further testified she did not report this information to anyone. Document 10, Exh. 4 at 129-30. Gloria also testified that she had seen Petitioner and A.D. together in a bathtub, and that on several occasions she witnessed A.D. sitting on Petitioner's lap under a blanket with Petitioner's hands also under the blanket. *Id.*, Exh. 4 at 121, 129, 134-36. At Petitioner's trial the victim at first could not remember or denied that Petitioner had abused her, but after a brief recess during which she spoke to her counselor, she then testified that Petitioner had touched her and penetrated her. *Id.*, Exh. 5 at 48-49, 56-58, 59-60, 61-62, 65-67. Petitioner also testified, denying the allegations against him and noting that, at the time the accusations arose, he and Gloria had been discussing a divorce. *Id.*, Exh. 5 at 113-64.

Respondent allows that, other than the victim's "statements and testimony, there was no objective, direct evidence supporting the charges for which Petitioner was charged." Document 9 at 6.

**C.      Petitioner's federal habeas claims**

Petitioner argues that he is entitled to federal habeas relief because he was denied his right to the effective assistance of counsel. In his petition, Petitioner asserts his trial counsel erred because:

1. he made no objection to the State's objectionable opening statement;
2. he helped establish the investigating detective's opinion of Petitioner's guilt;
3. he helped to establish the accuser was truthful;
4. he did not object to the state's witnesses' opinion that the accuser was truthful;
5. he did not object to inadmissible hearsay;
6. he welcomed evidence of prejudicial extraneous bad acts; and
7. he did not object to inadmissible victim impact evidence.

Document 1 at 6.

In his memorandum in support of his habeas petition, Petitioner argues his trial counsel was ineffective because counsel:

1. introduced the issue of the investigating detective's opinion of the defendant's guilt and his opinion regarding the truthfulness of the child, and he also introduced the opinion of the child advocacy director that the child was truthful;
2. he failed to object to the evidence from the child's parents that the child was truthful;
3. he introduced evidence of two extraneous bad acts committed by Petitioner;
4. he did not object to the prosecution's introduction of testimony that Petitioner smoked marijuana;
5. he did not object to the introduction of victim impact evidence during the guilt/innocence phase of the trial.

## ANALYSIS

### A. The Antiterrorism and Effective Death Penalty Act of 1996

The Supreme Court summarized the basic principles established by the Court's many cases interpreting the 1996 Antiterrorism and Effective Death Penalty Act in *Harrington v. Richter*, 562 U.S. 86, 97–100 (2011). The Supreme Court noted that the starting point for any federal court reviewing a state conviction is 28 U.S.C. § 2254, which states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court stated that "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington*, 562 U.S. at 98.

Section 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the state court's decision "was contrary to" federal law as clearly established by the holdings of the Supreme Court; (2) when the state court's decision involved an "unreasonable application" of such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Id.* at 100, *citing* 28 U.S.C. § 2254(d), *and Williams v. Taylor*, 529 U.S. 362, 412 (2000). The "contrary to" requirement refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Thaler v. Haynes*, 559 U.S. 43, 47 (2010)*; Mitchell v. Esparza*, 540 U.S. 12, 10 (2003).

Under the unreasonable application clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt*, 230 F.3d at 741 (quotation and citation omitted). A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fairminded jurists could disagree" on the correctness of the state court's decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. []. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).

*Harrington*, 562 U.S. at 102-03 (some internal citations omitted).

The Supreme Court, "time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Grim v. Fisher*, 816 F.3d 296, 304 (5th Cir.) (internal quotations omitted), *cert. denied*, 137 S. Ct. 211 (2016). "In order for a federal court to find a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003), *quoting Williams*, 529 U.S. at 409.

[A]n unreasonable application of federal law is different from an incorrect application of federal law. Thus, under § 2254(d), we first must determine what arguments or theories supported or . . . could have supported[] the state court's decision. We must then ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. The state court's determination that [a] claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.

*Clark v. Thaler*, 673 F.3d 410, 418 (5th Cir. 2012) (internal citations and quotations omitted).

**B.      The adjudication of claims under the *Strickland* standard**

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth

in *Strickland v. Washington*, 466 U.S. 668 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687. Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a

petitioner must show that (1) counsel's representation fell below an objective standard of

reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different. *Id.*

The prejudice prong of *Strickland* provides for federal habeas relief only if there is a

"reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Strickland*, 466 U.S. at 694. "'The likelihood of a different result must

be substantial, not just conceivable.'" *Trevino v. Davis*, 829 F.3d 328, 351 (5th Cir. 2016), *quoting*

*Brown v. Thaler*, 684 F.3d 482, 491 (5th Cir. 2012). When deciding whether counsel's performance

was deficient, the Court must apply a standard of objective reasonableness. *Strickland*, 466 U.S. at

686-89. Under the *Strickland* standard, the Supreme Court recognizes a strong presumption that

counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable

professional judgment. *Id.* at 690.

With regard to the deficient performance prong of the *Strickland* analysis, trial counsel has the "duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.* at 688. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Wiggins*, 539 U.S. at 521 (internal quotes omitted). A federal habeas court's review of the performance of counsel must be "highly deferential," and the Court "must make every attempt to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Nevertheless, this measure of deference to trial counsel "'must not be watered down into a disguised form of acquiescence.'" *Bouchillon v. Collins*, 907 F.2d 589, 595 (5th Cir. 1990), *quoting Profitt v. Waldron*, 831 F.2d 1245, 1248 (5th Cir. 1987).

A conscious and informed decision to pursue a particular trial strategy is "virtually unchallengeable" in federal habeas proceedings. *Pape v. Thaler*, 645 F.3d 281, 289 (5th Cir. 2011). The Fifth Circuit Court of Appeals has stated that "conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Richards v. Quarterman*, 566 F.3d 553, 564 (5th Cir. 2009). *See also Pondexter v. Quarterman*, 537 F.3d 511, 521 (5th Cir. 2008) (noting trial counsel's tactical decisions do not fall below *Strickland* standards because they do not succeed). However, strategic choices that have no hope of succeeding, are made without adequate investigation or preparation, or that actually imperil the defendant's case, cannot be considered "sound" strategic choices. *Ege v. Yukins*, 485 F.3d 364, 378–79 (6th Cir. 2007); *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d Cir. 2006); *Stadler v. Curtin*, 682 F. Supp. 2d 807, 825 (E.D. Mich. 2010). For example, in *Wiggins*, a death penalty case, the Supreme Court held that the state court of

appeals' conclusion that counsel's performance was within professional norms was objectively unreasonable. 539 U.S. at 527-28. In that matter counsel did not present evidence at the penalty phase on the petitioner's personal background, which was "a valid strategic choice under some circumstances," but the Supreme Court found this was deficient performance in that matter because counsel failed to make a reasonable investigation into the petitioner's social history. *Id.* Other strategic choices by counsel, such as the failure to object to obviously tainted and inadmissible evidence, *Ege*, 485 F.3d at 378-79, and the failure to cross-examine a key prosecution witness, *Higgins v. Renico*, 362 F. Supp. 2d 904, 916-17 (E.D. Mich. 2005), have been found to be so unsound as to negate the finding that counsel's performance was in accordance with "prevailing professional norms." *Wiggins*, 539 U.S. at 521.

In considering a state court's application of *Strickland*, AEDPA review must be "doubly deferential" in order to afford "both the state court and the defense attorney the benefit of the doubt." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015); *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). Accordingly, when evaluating Petitioner's complaints about the performance of his counsel under the AEDPA, the issue before this Court is whether the Texas Court of Criminal Appeals could reasonably have concluded Petitioner's complaints about his counsel's performance failed to satisfy either prong of the *Strickland* analysis. *Schaetzle v. Cockrell*, 343 F.3d 440, 444 (5th Cir. 2003).

### C.      Petitioner's claims for relief

Petitioner raised all of his federal habeas claims in the state courts. The only explained state court opinion denying his claims was the Texas Court of Appeals' decision in Petitioner's appeal. In denying the ineffective assistance of counsel claims, the Texas Court of Appeals concluded:

Appellant maintains that he "did not even receive the minimal standard of advocacy." We disagree. During voir dire, trial counsel questioned the members of the jury panel regarding their ability to serve on the jury: they discussed important legal concepts such as the presumption of innocence, the State's burden of proof, and appellant's Fifth Amendment right not to testify; they explored possible bias or preconceptions relating to child sexual abuse cases; they discussed issues factually relevant to the case such as children's knowledge of or exposure to information regarding sex; they asked the jurors their views regarding the truthfulness of children; and they discussed potential bias against appellant. They also successfully challenged several panel members for cause. Further, the record shows that throughout trial counsel presented and developed a defense strategy of a false accusation. In support of this defense, trial counsel emphasized, through cross-examination of the State's witnesses and in jury argument, the one-sided nature of the State's case, the flawed police investigation (including an incomplete SANE exam), the lack of corroborating evidence, inconsistent statements from the outcry witness (A.D.'s grandmother), A.D.'s inability to recount details about the abuse in her testimony, and the bias of the State's witnesses. Counsel also attempted to provide alternative explanations for A.D.'s knowledge of sexual acts, including observing her parents engage in sexual acts and obtaining information from her teenage half-brother. During closing argument, trial counsel discussed A.D.'s vague responses during her testimony at trial, the lack of corroborating evidence, the rush to assume appellant's guilt by those involved in the investigation of the allegations, and the bias of A.D.'s family members and the State's experts. Trial counsel again discussed the presumption of innocence, presented sources of reasonable doubt to the jury, and reminded the jury that appellant had consistently denied guilt and had cooperated fully with the police investigation, even voluntarily providing a sample for DNA testing.

*Cisneros*, 2015 WL 1215625 at *3.

In his memorandum in support of his federal habeas claims, Petitioner maintains: "There can be no sound strategy for the defense to introduce or forego objections to extraneous bad acts, fail to object to victim impact evidence, or to bolster the truthfulness of the accusation against their client." Document 1, Exh. 1 at 22. Petitioner asserts: "In this case, counsel's stated strategies, if believed, were ludicrous. He repeatedly introduced or invited inadmissible, damaging evidence against his client. According to his affidavit, he did so deliberately. His incompetence was catastrophic." *Id.*, Exh. 1 at 10. Petitioner further argues:

It can be valuable to demonstrate the bias of a prosecution witness. The purpose of proving bias casts doubt upon the witness' credibility. But there is no strategic value in establishing bias independent of this purpose. The parents and investigators do not become less credible because they harbor a "bias" in favor of a sexually abused child. This sentiment is not the bias which bears on credibility. On the contrary, it is completely understandable. Far from undermining their credibility, this evidence did nothing but establish the unanimity of opinion that the child's accusations were true.

Seasoned professionals and parents alike found the child to be completely truthful in her allegations. The power of this evidence is self-evident. Counsel's strategem (sic) of welcoming this prejudicial testimony in a misguided effort to cast doubt on the witnesses is absurd.

Counsel attempted to justify the introduction of the investigating officer's opinion about the truthfulness of the child's testimony because "the officer stated that he does not form an opinion as to guilt." However, it was defense counsel himself who elicited this testimony. Nowhere does he explain (or could explain) why it was reasonable to elicit testimony that he would then be required to rebut. Counsel's use of the word "strategy" as a talisman against claims of ineffectiveness should be warded off by this Court's reason and experience. *Cave v. Singletary*, 971 F.2d 1513, 1518 (11th Cir. 1992) (attorney's characterization of his performance as "strategy" rejected); *Horton v. Zant*, supra.[2]

*Id.*, Exh. 1 at 22-23.

Respondent argues in response to the habeas petition:

[T]rial counsel plainly developed a well-considered, cohesive, and not uncommon strategy in which he attempted to demonstrate that A.D. falsely accused and fabricated her outcry against Cisneros—but was then unable to retract her story because of the bias and manipulation committed by both her family and agents of the State. As is common with this kind of defense, trial counsel attempted to show an unjustified "rush to judgment" on the part of virtually all of the State's witnesses while also emphasizing the unfair bias of those same witnesses.

Document 9 at 18.

---

[2] In *Cave*, the habeas court found "that rather than adopting a strategy to confuse the jury on the law, [counsel] had simply misunderstood the elements of the charges faced by her client." 971 F.2d at 1518. In *Horton*, counsel's decision in the sentencing portion of a capital murder prosecution to not present mitigating evidence or conduct an investigation was found deficient performance, particularly because counsel also attacked the defendant's character and separated himself from the defendant. 941 F.2d 1449, 1462 (11th Cir. 1991)

In an affidavit provided in Petitioner's state action for a writ of habeas corpus, Petitioner's

lead trial counsel averred:

> I argued to the jury that throughout the entire investigation the officers, parents of the victim, and Child Advocacy witness were biased in favor of finding the defendant guilty even though each one of them testified that they were not allowed or had not formed an opinion about the guilt of the defendant. I effectively laid the groundwork to impeach the state's witness's credibility by opening the door for the State to ask if the officer thought that the defendant was guilty. Whereas originally on cross exam the officer stated that he does not form an opinion as to guilt since that is not his job, but the job of the jury, on re-direct the officer stated that he in fact had formed an opinion that the defendant was guilty. This was in direct conflict with his previous testimony and showed that the officer was not an impartial investigator as the state had tried to establish. My trial strategy was to elicit this conflicting testimony from the state's witness in order to attack the credibility of the witness and to show that the witness was biased since he had formed a preconceived notion about the guilt of the defendant, which he himself stated was not his job, but the jury's. This strategy of asking the officer about his belief in the guilt of the defendant was not only effective at exposing the bias of the officer, but also fit into the framework of our trial strategy employed to demonstrate that the state's witnesses were biased and not impartial investigators.

Document 11, Exh. 20 at 58-59.

1. <u>Petitioner alleges his trial counsel failed to object to the State's objectionable opening

statement.</u>

Petitioner contends his counsel's performance was deficient because counsel did not object

to this last statement made by the prosecutor during opening argument:

> There is no reason for [A.D.] to lie because it's not a lie. He did those things to her. And we are confident that at the end of this trial you will see what we all have seen, and that's that he is guilty of all the charges and we'll ask you to find him guilty because he is guilty.

Document 10, Exh. 3 at 26.

Petitioner raised this claim in his state application for a writ of habeas corpus. Document 11, Exh. 18 at 3. The state trial court denied relief without explanation, and the Texas Court of Criminal Appeals denied the application without written order.

As noted by Respondent, Petitioner's trial counsel did object to the prosecutor's opening statement as argumentative on three occasions, and the trial court sustained all three objections. Document 10, Exh. 3 at 23, 25. Additionally, the jury was instructed by the trial court with regard to the weight to be given opening statements. *Id.*, Exh. 3 at 12 ("The important thing to keep in mind is that opening comments are not evidence, they are simply a roadmap, a thumbnail sketch, an outline of where the attorneys think that the evidence is going to go."); Exh. 3 at 10 ("In addition to that, do not pay any attention to anything that is occurring, essentially, outside the evidence.").

Having reviewed the state court record, the undersigned concludes that Petitioner has not shown that the denial of this claim was an unreasonable application of *Strickland*. Petitioner has not shown that the state court's resolution of this ineffective assistance claim was unreasonable under the "doubly-deferential" standard applied to *Strickland* claims. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

2. Petitioner alleges that counsel's performance was deficient and prejudicial because counsel failed to object to A.D.'s parents' opinion that she was telling the truth with regard to the abuse.

Petitioner raised this claim in his appeal and in his state application for a writ of habeas corpus. Document 10, Exh. 15 at 42-45; Document 11, Exh. 18 at 3. The Texas Court of Appeals found that counsel's performance was not deficient and that any prejudice was speculative. *Inter alia*, the Texas Court of Appeals found: "Appellant's repeated assertion that there was no good trial strategy to account for or explain counsels' conduct is mere speculation. Such speculation does not

constitute a demonstration, founded in the record, that no reasonable trial strategy existed." *Cisneros*, 2015 WL 1215625 at *2. The court also found: "Appellant has failed to rebut the strong presumption of reasonable assistance because without explanation for trial counsels' decisions, the complained-of conduct does not compel a conclusion that their performance was deficient. We cannot say that 'no reasonable trial strategy could justify' their decision to engage in the complained-of conduct." *Id.*

In his habeas action the state trial court denied relief without explanation, and the Texas Court of Criminal Appeals denied the application without written order.

In his affidavit in Petitioner's state habeas action, trial counsel stated:

> It is a legitimate trial strategy to not make certain objections when the strategic value of those objections is low and when you also run the risk of making the jury think that you have something to hide. In this case most people would assume that the parents of an abused child would believe their child was telling the truth, therefore the probative value of the state's witnesses' statements was low since the jury was likely to assume that they believed their daughter was telling the truth. I strategically decided not to object to this line of questioning, because it would likely have caused the jury to wonder about why the defendant wanted to cover up these answers. Additionally, from my experience the opposing counsel would attempt to rephrase the question which would only highlight and more draw [sic] attention to the point the state was trying to make. As the Austin court of appeals stated in the 3rd footnote of their opinion that fact that the family had a long relationship with the defendant with no reason to suspect that he was involved in abusive behavior and then automatically believed the victim was telling the truth without any corroborating proof, played into our trial strategy of demonstrating to the jury that the witnesses against the defendant were biased.

Document 11, Exh. 20 at 61-62.

The alleged failure to object to this testimony was based on a legitimate strategic decision by counsel. Having reviewed the state court record, the undersigned concludes that Petitioner has not shown that the determination that trial counsel was not ineffective for failing to object to this testimony was an unreasonable application of *Strickland*.

3. Petitioner contends trial counsel erred by eliciting evidence of two extraneous acts of abuse.

At trial, in response to questioning by defense counsel, A.D.'s grandmother testified to a previous instance in which Petitioner may have improperly touched A.D. under a blanket, and an instance in which she observed Petitioner and A.D. bathing together. Document 10, Exh. 4 at 129-31, 134-36. Defense counsel pointedly elicited testimony to the contrary from A.D.:

> Q. Your grandma said that she saw you in the bathroom taking a bath with your Buelo?
> A. That's not true.
> Q. That's not true? Okay. And you know the difference between telling the truth and lying, right?
> A. Yes.
> Q. Okay. Now, your grandma says that you used to sit on his lap and one time there was a blanket on top of – covering you and your Buelo as you sat on his lap; do you remember that?
> A. No.
> Q. Okay. Did you ever tell your grandpa that – did you ever tell your grandma that he – that your Buelo touched you while you were sitting on his lap in the house?
> A. He didn't do that.

Document 10, Exh. 5 at 109.

In addressing this claim in Petitioner's state habeas action, trial counsel averred:

> I elicited testimony from the wife of the defendant that she had previously had reason to suspect that the defendant might have been sexually molesting the victim. This was in direct contradiction to the witnesses' recorded statement to the police in which she stated that she never had any indication that defendant was capable of something like this. My trial strategy was to attack the credibility of the witness by demonstrating that she gave inconsistent statements to the police and the jury. This also served to highlight the fact that the witness had a potential interest and bias in finding the defendant guilty, since she had divorced him recently and been awarded all of their property. My strategy was to persuade the jury that the witness may have been fabricating the extraneous offenses that she allegedly observed in order to protect her own financial, pecuniary interest. Whereas, early on she had told police that she had no reason to suspect the defendant had ever committed this kind of offense, after the divorce and at trial the witness suddenly was able to recall 2 distinct

incidents where she suspected the defendant had been committing sexual abuse towards the victim. Furthermore, the fact that the witness observed two incidents of child abuse and failed to report them called into question her veracity as a witness, since a reasonable person would be expected to inform the authorities about these incidents. In sum my strategy was to expose the bias and inconsistency in the witness's statements when it allowed testimony of extraneous offense to be introduced.

Document 11, Exh. 20 at 60.

Petitioner raised this issue in his appeal, Document 10, Exh. 15 at 34-39, and the state court denied relief. Petitioner also raised this claim in his state habeas action, and the Texas Court of Criminal Appeals denied relief. Having reviewed the state court record, the undersigned concludes that Petitioner has not shown that the state court's resolution of this ineffective assistance claim was unreasonable under the standard applied to *Strickland* claims. *See Johnson v. Cockrell*, 301 F.3d 234, 239 (5th Cir. 2002) (eliciting testimony that is not necessarily favorable to the defendant but may serve some other strategic purpose is not necessarily deficient performance).

4.  Petitioner alleges counsel's performance was deficient and prejudicial because counsel did not object to the prosecution's introduction of evidence that Petitioner smoked marijuana.

During A.D.'s grandmother's testimony, in response to a question about A.D. "following" Petitioner, the grandmother stated: "Well, like I said, she went out – she had a habit of going out with him every time he was gonna smoke a cigarette or was gonna go smoke pot. You know, he has a habit of smoking pot." Document 10, Exh. 4 at 79. This immediately resulted in the following colloquy:

THE COURT: Counsel, approach.
MS. LOCKHART: Your Honor, there's been no objection, but I'll approach.
(At the Bench)

> THE COURT: He didn't have an opportunity to object. I mean, the witness needs to be admonished not to throw stuff in there. That's the third time and I'm getting relatively angry about that.
> MS. LOCKHART: I'm unclear about what the problem is.
> THE COURT: Well, the problem is that's the third time she has put in a bad act that was not in response to a question. I'm not upset with the State on that, because it was not in response to a question, but she has thrown in that three times. Take a moment to admonish the witness, proceed from there.

*Id.* After this colloquy, outside the presence of the jury, the trial court admonished A.D.'s grandmother, and the jury was subsequently instructed not to consider this testimony. *Id.*, Exh. 4 at 80.

In his affidavit in Petitioner's state habeas action, trial counsel averred:

> There was no chance for me to object to the testimony about the defendant's marijuana use. As the record indicated the judge immediately called for a bench conference before I had the opportunity to object to the improper testimony. I remember standing up to voice the objection and having the judge in the case react to that movement and anticipating the objection before it was even voiced. I believe that the record will reflect that I had an understanding of the rules of evidence and voiced many proper and timely objections. In any case the Judge immediately stopped the testimony and instructed the jury to disregard the testimony about the Marijuana use.

Document 11, Exh. 20 at 60.

Petitioner raised this issue in his appeal, and the state appellate court denied relief. Petitioner has not shown that the state court's resolution of this ineffective assistance claim was unreasonable under the standard applied to *Strickland* claims, because the trial court itself objected to the testimony and, accordingly, counsel's alleged failure to object to this testimony was not prejudicial.

5. Petitioner asserts his counsel's performance was deficient and prejudicial because counsel made no objection to victim impact evidence, i.e., testimony by A.D.'s parents, introduced by the prosecution during the guilt phase of the trial.

At Petitioner's trial A.D.'s father, Petitioner's stepson, testified:

Q. Now, since [A.D.] told about what happened, has that affected your family?
A. It's affected my family greatly. You know, the first six months that this happened, I mean, everybody was just devastated. You know, me and Sharon [] just couldn't believe it. [A.D.], she's angry, she's different. You know, she's real cautious now and [] she's always been real free-willed. You know, she's just changed, you know. She would have nightmares at night. You know, I'd hear her, wake up to hear her say, "No. Stop, Buelo. Stop." You know, it's that's just something you don't want to hear, you know.
Q. Has it has it divided your family in any way? Has it made things difficult for you to maintain relationships with people in your family?
A. It yes, in a way, because I feel it just feels so awkward now. And I just feel like the way that they look at my daughter now, it's like, "Oh, poor [A.D.]." . . . And just everybody is it's just all different now. Our family is just totally different now. It's hard to explain without being there, you know, but it's just like a big, white elephant in the room all the time when everybody is around my daughter.
***
Q. So if there was a rift caused in the family, is [A.D.] the type of child who would be aware of that?
A. No doubt. She's very sharp.
Q. And how have you seen her deal with that knowing that because of what she said she's caused turmoil?
A. She feels embarrassed. You know, she just she doesn't want – you know, she doesn't like to talk about it, she doesn't want anybody talking about it. You know, we that's a sensitive, you know, issue with all of us now. We just we don't try to talk about it or anything like that. But, yeah, she's – she's very, you know – like I said, she feels as if she did something wrong, and she shouldn't feel that way.
***
Q. And have you seen what she had to go through affecting her?
A. Yeah. Yes, I have. Like I said, you know, the sleepless nights, you know, just the way she is in school now. I mean, she's still an excellent student, but she's – she's really shy. You know, she never was like that, she was very outgoing all the time. And she loved everybody and wanted to be around everybody, real outspoken. And now, you know, I just notice, like, when I take her to the playground she's really shy and keeps to herself. She's changed a lot since then. She's a lot angrier, also, you

know, slamming doors, you know, when she goes to her room; and just a lot of little things that she was never like that.
Q. And [A.D.]'s been going to counseling specifically for the issue of her sexual abuse, right?
A. Yes, ma'am.
Q. And are you-guys good about getting her to counseling regularly?
A. Yes, ma'am.
Q. And has there been something that the counselor and you both feel is at least helping a little bit?
A. Yeah, we talk to her counselor and she says that [A.D.'s] doing very well. They're surprised and say she's a bright child; she's very smart, you know.

Document 10, Exh.4 at 184-87.

At Petitioner's trial, A.D. 's mother, testified:

Q. How would you describe the way [A.D.]'s father was handling this news?
A. He was upset, he was distraught, angry. He just he we saw each other and we just we cried. It's not something you want to hear when it's done to your child.

*Id.*, Exh. 4 at 153.

Petitioner alleges counsel's performance was deficient because he allowed this testimony, but Petitioner does not argue how allowing this testimony was prejudicial, noting only that the testimony was not admissible. Document 1, Exh. 1 at 21. Petitioner raised this claim in his state action for habeas relief. Document 11, Exh. 20 at 35. The Texas Court of Criminal Appeals denied relief without written order. This decision was not an unreasonable application of *Strickland*. The testimony on this issue was extremely limited and, after a thorough review of the record in this matter, the undersigned concludes that the Texas court could reasonably conclude that any alleged failure to object to this testimony was not deficient performance nor prejudicial.

6. Petitioner argues that his trial counsel's performance was deficient and prejudicial because counsel helped to establish that the victim's allegations of abuse were truthful.

Petitioner contends trial counsel's performance was deficient because counsel introduced the issue of the investigating detective's opinion of Petitioner's guilt, and his opinion regarding the truthfulness of the child. Petitioner also alleges deficient performance because counsel also introduced the opinion of the child advocacy center's director that the child was being truthful. Document 1, Exh. 1 at 10.

The issue with regard to the child advocacy center's director was raised in Petitioner's direct appeal and in his state habeas action. Document 10, Exh. 15 at 51-55, 55-60; Document 11, Exh. 20 at 35. The issue with regard to the investigating detective was presented in Petitioner's state action for habeas relief. Document 11, Exh. 20 at 35. Petitioner's trial counsel prepared an affidavit in that matter, stating:

> [O]ur strategy in allowing the state's witness to testify that they believed that the defendant was actually abused, struck at the heart of our trial strategy to expose the biased and incomplete nature of the investigation and to give the jury reasonable doubt into whether or not the state completed a thorough investigation. By asking the state's witness whether or not she believed the defendant was actually abused, I left the door open for the witness to impeach her own credibility which she did as demonstrated on the trial record. Whereas originally the witness testified that it wasn't her job to make a presumption about the truthfulness of the victim and that that job was up to the jury, on redirect she testified that in fact she did believe the victim was telling the truth and that she additionally believed that the defendant was guilty. This went along with the trial strategy of demonstrating that the people investigating the victim's claims in this case had a bias in favor of the victim that carried throughout their investigation. By opening the door to this opinion testimony I effectively showed that the witness was not an impartial investigator and had already formed the belief that the victim was telling the truth even though there was no corroborating evidence. This trial strategy was borne out in closing arguments when I highlighted the biased and incomplete nature of the investigation and how each state's witness believed that the defendant was guilty even though there was no corroborating evidence.

Document 11, Exh. 20 at 62-63.

In rejecting Petitioner's ineffective assistance of counsel claims, the Texas Court of Appeals determined:

> For example, in half of his complaints about trial counsels' performance, appellant criticizes them for eliciting, failing to object to, or purportedly opening the door to testimony from the State's witnesses regarding their belief in appellant's guilt or A.D.'s truthfulness. Ordinarily, witnesses are not permitted to testify as to their opinion about the guilt or innocence of a defendant, *see Sandoval v. State*, 409 S.W.3d 259, 292 (Tex. App.– Austin 2013, no pet.); *Boyde v. State*, 513 S.W.2d 588, 590 (Tex. Crim. App. 1974), or the credibility of a complainant or the truthfulness of a complainant's allegations, *see Sandoval*, 409 S.W.3d at 292; *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997); *Yount v. State*, 872 S.W.2d 706, 711 (Tex. Crim. App. 1993). An argument can be made, however, that counsel engaged in the conduct here in order to demonstrate the bias of the State's witnesses. For example, the questions propounded to law enforcement officials arguably attempted to highlight the officers' immediate assumption that appellant was guilty after hearing about A.D.'s outcry, which led to a failure to conduct a thorough or complete investigation. . . . Opening the door or not objecting to testimony from certain experts-the program director from the children's advocacy center, the sexual assault nurse examiner, and A.D.'s counselor-afforded counsel the opportunity to highlight the limited-and biased-nature of their knowledge and opinions: these individuals admitted they were child advocates who were only familiar with A.D. and her side of the story, having no knowledge of appellant or the circumstances of the situation other than from information gained from A.D.

*Cisneros*, 2015 WL 1215625 at *4 n.3.

Petitioner has not shown that the alleged errors by trial counsel were other than a strategic decision that was not unreasonable or below the prevailing professional norm. *Pape*, 645 F.3d at 291-92. Accordingly, state court's resolution of this ineffective assistance claim was not an unreasonable application of *Strickland* to Petitioner's claim.

## CONCLUSION

Petitioner has not established that his trial counsel's performance was deficient, or that any alleged deficiencies were prejudicial. Under the deferential standard applied pursuant to the AEDPA, the state courts' decisions denying these claims as presented in Petitioner's appeal and state action for a writ of habeas corpus were not an unreasonable application of *Strickland*. Accordingly, federal habeas relief is not warranted in this matter.

## RECOMMENDATION

It is, therefore, recommended that Petitioner's Application for Writ of Habeas Corpus be **DENIED**.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's

underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

<u>OBJECTIONS</u>

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153 (1985); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

**SIGNED** on May 11, 2017.

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE